We'll hear argument first this morning in Case 10-875, Hall v. United States. Ms. Freeman. Mr. Chief Justice, and may it please the Court. Bankruptcy states incur taxes when they generate income. The government's attempt to limit the effect of the Farm Sales Statute, Section 1222A2A, alters that fundamental principle in corporate Chapter 11 cases and in all bankruptcy cases as it requires this Court to construe the administrative section and the priority section of the Bankruptcy Code that do apply in all of those cases. In a Chapter 12 case, the bankruptcy estate consists of more than just the assets that existed as of the date of filing. They also consist of all of the income that is earned thereafter, wages. Mrs. Hall's wages as a convenience store clerk are part of the bankruptcy estate. The proceeds from selling crops. Does it include debts incurred after the filing? From the period from the petition filing date until the confirmation of the plan, yes, it does.  And it includes the debts that were incurred after that date? Yes, Your Honor. So that, for example, operating an estate, you would incur a light bill, as well as incurring taxes. All of the operating expenses are incurred by the bankruptcy estate and are payable from the income and from the estate assets during that period from the petition filing date until the confirmation of the plan, the administrative period. Is that true of state taxes? Is it true of state taxes? Yes, Your Honor. It is true of state taxes as well as Federal taxes. County taxes, for example. So in this we're dealing with a capital gains tax on the sale of the farm. Suppose the State had a similar tax. It also taxed the gain on the sale. Correct, Your Honor, and it did in this particular case. So there would be State taxes on the capital gains, and those would also be administrative expense priorities except for the farm sale provision here, which demotes that priority if the debtor is able to earn a discharge. And if so, then those farm sale taxes are demoted in priority and may be discharged under a plan of reorganization. They would share pro rata with the other prepetition claims of the bankruptcy estate. Now, who would file the State tax return? Would it be filed by the estate or would it be filed by the debtor? The debtor and the estate are one in a reorganization case, and so the taxpayers, Linwood and Brenda Hall, would file the tax return. The way that it would actually be administered, Your Honor, is shown by the Knudsen case, and basically there would be a tax return that includes all of the income, the wages, the crop sale proceeds and so forth. And then it would compute it with the capital gains tax, and there would be a separate pro forma return that does not include the capital gains tax. Those would be sent to the Special Procedures Unit of the IRS so that somebody there would know how to deal with it and would be able to deal with it. Sotomayor, how do you deal with Section 346? Section 346, Your Honor, basically makes the State taxes consistent with the Federal taxes. When you have the State taxes. Sotomayor, how do you deal with Section 346b to say that unless the estate is a separate tax entity under the code, that the debtor, not the estate, pays State and local taxes? This is totally contrary to what you are saying, but the language of 346b basically answers the question against you with respect to State and local taxes. Justice Sotomayor, I do not think it does in the sense — in this sense. The bankruptcy — Section 346b made the State and local taxes consistent with Federal taxes. And when you have a bankruptcy estate that consists only of assets on the petition filing date, then you have a separate taxable entity with a separate tax ID number that is set up. But under the Federal bankruptcy, under the Federal tax code, under Section 1399, whenever the bankruptcy estate had income during the course of the estate, during the administration period, as well as the assets on the petition filing date, then it's a single taxable entity. And so that single taxpayer would pay it. Section 346 doesn't say what assets are used to pay the tax. That's a matter of bankruptcy law. The debtor, the individual taxpayer, is going to file the tax return under State and local and Federal law, but he's going to use the estate assets because that's all there is. He doesn't have any other assets. Sotomayor, so the debtor is going to pay. And so when this says, whenever the Internal Revenue Code of 1986 provides that no separate taxable estate shall be created in a case concerning a debtor under this statute, does that mean that the debtor is going to create a separate taxable estate? Correct. And that the income, et cetera, shall be taxed to or claimed by the debtor under State or local law? That's correct, Your Honor. It's going to be on the debtor's tax return. The debtor is the one who will have the deductions, and the deductions would include administrative expenses of the bankruptcy estate. Sotomayor, this is hard for me to understand, given the last line. The estate shall be liable for any tax imposed on such corporation or partnership, but not for any tax imposed on partners or members. By the logic of that last sentence, it seems to me that the preceding section is not looking to the estate, but to the debtor to pay the taxes. The debtor pays the taxes, but with estate assets, because those are the only assets that exist. So why would the last sentence be necessary? The last sentence, I believe, Your Honor, deals with a partnership, and in a partnership case, just as outside of bankruptcy, the partnership files the tax return and the partners individually are the ones who pay the taxes. But they pay the taxes if a partner is in its own bankruptcy estate with the only assets that exist, all of his income, all of his wages, all of those are property of the bankruptcy estate, and he would use it to pay the taxes. He's not individually liable any more than if a trustee were individually liable. The trustee in a bankruptcy case uses estate assets to pay taxes. And so it's not liable for the tax imposed on the partner. So if it's not liable, how can it ask for a discharge? The debtor ultimately is the one who receives a discharge. Discharge provisions are separate than the tax payment issues. Tax payment deals with what monies are used to make the payments of taxes during the course of administration of a bankruptcy case. The debtor receives a discharge in a Chapter 12 case if it complies, if he complies with all of the provisions of his plan of reorganization and then receives a discharge. There are exceptions to the discharge. Certain prepetition taxes are accepted from a discharge and would carry through during the postpetition. But the farm sale statute provides that these particular administrative expenses would be subject to a discharge if he complies with the rest of the provisions of the of his plan of reorganization. Breyer. What happens in a 12 or 13 case, just your typical case, and this must arise fairly often, in year 1, on January 1, the farm or the ship or whatever is the subject goes into Chapter 12 or 13. They have a lot of pre-1 debts. Then in year 2 and year 3, the proceedings are going on, but the farm is operating, so is the ship or whatever. And they earn, they run up debts during that time. People give them fertilizer, they give them all kinds of things. So they have a lot of debts that they've run up in that time. Now it draws to a close at the end of year 3. Now, what about those debts that have been run up during that time? There isn't a separate bankruptcy estate for tax purposes, I understand. But if Joe Smith has loaned this farm some money during that time, and it comes time to look at the future income, to subtract the pre-petition debts, does his debt get wound up and get some priority in that process, or is he just at the end of the queue? He does get priority in that process. All right. Well, if he gets priority, then why in heaven's name shouldn't a tax get priority? That's your point. It does have that priority. And if it does, then, of course, the exception that Senator Grassley put in applies to that. So that's a question I should ask them, given your answer. Yes, Your Honor. And, in fact, those taxes, along with the light bill and any other administrative expenses, would be paid when due over that 2- or 3-year period. And that's certainly what happens in a large Chapter 11 bankruptcy case, like a Delphi bankruptcy case or a General Motor. Well, but, I mean, the you're — it is a question for you, because these things don't go for 2 or 3 years, do they? I thought typically they are wrapped up very quickly, and that's to the advantage of the debtor. And the — your position with respect to post-petition taxes has the potential of extending them beyond the kind of quick turnaround that helps everybody. Respectfully, Mr. Chief Justice, in Chapter 12 cases, often the bankruptcy estate will drag on for 2 or 3 years, and certainly for longer than 1 year, and much longer than a Chapter 13 case, because you do have sales of assets, you have debts that need to be restructured, you have leases that end up getting rejected, you have new crop subsidies that are applied for and received. The chapter — the amicus curiae brief of the professors has a study that has been published and shows how long Chapter 12 cases generally last. How long was this one? This case, Your Honor, because of this appeal, has lasted from 2005 through today. So a considerable period of time. And all of the taxes during that period of time and all of the operating expenses during that period of time are administrative expenses and are payable in the ordinary course. There's an administrative expense claim if, in fact, they haven't been paid. And if one of the creditors has not received payment or if a taxing authority has not received payment, it can move for payment as an administrative priority. It can ask that it be paid now, and it can ask that the case be dismissed if it hasn't been paid. So you do have that highest priority. And this is consistent with the Court's Nicholas case, 1966, which preceded the bankruptcy code and which the bankruptcy code really incorporated and continued with. In the Nicholas case, the Court said that all taxes incurred by debtor in possession and incurred during the administration period have administrative expense priority. And they are payable by the debtor in possession as an officer of the court, as the administrator of the estate under 28 U.S.C. Section 960, which is still in effect today, and which requires that the person in control of the bankruptcy estate, whether it's a trustee or a debtor in possession, pay those taxes, but not pay them with his own money. As the Court said in the Nicholas case, you pay them with the assets of the estate. The individual trustee is not responsible. The individual debtor in possession is not responsible. The responsibility of the debtor in possession really is a matter of the discharge provisions, whether he's going to be separately discharged or if he has responsible person liability because he's you're dealing with trust fund taxes with wages from some other person. Breyer. The what you say to me makes a great deal of sense, but I think one of their stronger arguments is that it may make sense. But unfortunately, even if Senator Grassley and the others wanted it, they didn't do it right technically. They didn't amend the right provision of the code, and whoever's fault that is is beside the point. So there's no way to get the words to get to the result that you want. I'll tell you the best I can do, and I see a problem with it. If you say that you go to 1226b-1, and it says that any unpaid claim of the kind specified in 507a-2, and 507a-2 talks about administrative expenses, it infers you to 503, and 503 includes taxes and administrative expenses, and then you say it's 1220, whatever it is, what did I just say, 1226? It's like an Abbott and Costello movie. The you get to 1226b-1, and it says that you shall be paid any unpaid claim of that kind, including administrative expenses, and so then you have 1222a, which refers to that, and then the amendment applies to that. But now what I did was I sloughed over it by talking too quickly. It talked about claim, of a claim, it says, and any unpaid claim of the kind specified in 507a-2, and when you look to 507a-2, it talks about claims and expenses, and then in 2 there it refers to administrative expenses. And so I think the government says they left out what was key to you, the word expenses. Now, I don't know what I'm doing when I start tinkering with this bankruptcy code, and is that just true what they say? It does leave out the word expenses. Will we cause untold harm if we read the word claims there to include expenses? Your Honor, respectfully, you would cause untold harm because this provision applies in corporate Chapter 11s and in all bankruptcy cases. They all have the administrative expense provision, 503, and they all have section 507. So you would stop taxes from being payable in a big Delphi. Breyer, but I was thinking, suppose I do it by reading the word claims in 5, in 1226 when it says any unpaid claim, which is what you want to have include taxes, to read that word as including both the 507a claims, which are in 1a, 1b, and also administrative expenses in 2. Can I do that? You can, Your Honor, because claim is defined in section 101 of the code as right to payment. Creditor is defined as someone who has a claim that arose prepetition, which necessarily means claim is broader and not just one that arose prepetition. There are numerous provisions of the Bankruptcy Code that refer to administrative expenses as claims, including 1226, and so the Court can see that those are interpreted consistently. This Court in the Hartford Underwriters case referred to administrative claims, calling them claims as well as administrative. And really what the government's argument here is that administrative expenses are outside of bankruptcy altogether, that they're not part of what get paid in a bankruptcy case, and that's simply untrue. If the Court looks at the provisions with respect to requirements of a plan, including 1222a, which apart from the exception, it says that administrative expenses are required to be paid. Section 1228 says that a plan discharges all debts, including debts provided for allowed under section 503, debt is a liability on a claim. Breyer's question, what actually happens? I mean, this isn't the first year of Chapter 12 and 13. Right. And there must be instances where the debts run up postpetition are pretty big. And there isn't enough money to go around, and they're going to have to be paid out of future income along with the prepetition debts. And it can be done, but there is a question of priorities, and the government is saying there is no priority. I think they're saying that for a postpetition debt, and you're saying, oh, but of course there is. So what actually happens? There have been perhaps thousands and thousands of cases, haven't there? And administrative expenses do get paid in the ordinary course. And if the fact is that the government is not paying the debt, it's not going to be paid. Get paid if necessary by assigning priorities? Yes. They have administrative priorities. And so to look to a horn book on bankruptcy law, which just tells me what you've just said, I would look where? We've cited a number of horn books that have exactly that provision. What's particularly interesting with respect to the government's position here is that at the government's urging, Section 507A8 of the Bankruptcy Code that provided for prepetition priority, eighth priority for prepetition taxes within a short period before the Bankruptcy Code, was amended so that all of those eighth priority taxes during the year of the filing, the straddle year here that halls filed their bankruptcy case in August, so during the entire period from January 1 through August when they filed, are treated as administrative expenses. And yet now they say administrative expenses mean nothing, and they don't get any payment as administrative expenses. Why urge the change? Why make all of those year of filing taxes into administrative expenses and then say administrative expenses have no meaning? Sotomayor, I'm going to ask the government this, but are you aware of any circuit split or any cases below that have accepted the government's arguments that Chapter 12 involves prepetition debts only and that don't pay administrative expenses post-bankruptcy? There are several cases that have interpreted Section 1222A28. None of them have addressed the change in 507 or what that means. Sotomayor, the government's now saying that Chapter 12 involves only prepetition claims. Right. And it's basically by that argument saying it doesn't involve and can't involve administrative expenses. That's how I read their argument. And so I'm asking is, are there any courts, if you're aware of, below, who have been presented with this argument outside of the tax situation who have accepted it, who have failed to give priority to administrative expenses? None outside of this tax situation, and, Your Honor, I don't believe that any of the cases that have followed the government's interpretation of this farm sale statute, 1222A2A, have addressed the impact on other administrative expenses and other tax claims, the wages, the taxes on wages that are incurred, the lottery winnings that an individual farmer might have, and the fact that those have administrative priority and that those would need to be paid off the top as administrative expenses. None of the cases address those. Sotomayor, I'm not asking you to defend their position. It's just such a broad position that I'm trying to understand if there's a split out there that we're unaware of. And the problem, Your Honor, is that it does have these broad impacts and none of the courts have really addressed it. And I don't believe that certainly the So can we go back to the issue that gives me trouble? Yes, Your Honor. Sotomayor, how to read incurred by the estate? If the estate doesn't pay taxes, how could it be incurred by the estate when Congress, if it intended what you're saying it intended, could have said incurred during bankruptcy? To incur is to take on liability. So at the point in time that income is generated during a bankruptcy case, then liabilities are taken on at the same time, the operating expenses, the taxes. Here you had a clear estate asset, the Hall Farm. It was sold. That generates an income tax liability, a capital gains liability. And so that is that it's tied to the income, which is here property of the estate. The point being is that the problem is that with an exception that's not applicable here, Section 1399 of the Internal Avenue Code provides that no separate taxable entity shall result from the commencement of a case under Title XI of the United States Code. How can you incur a tax when you are not a separate taxable entity? Your Honor, because you are a single taxable entity instead of a separate taxable entity. The whole reason for the separate taxable entity section was when you had a bankruptcy estate that consisted only of the assets on the petition filing date, and the debtor earns income independently. So the debtor would independently have tax liability, and that would be separate from the estate. But when you have a reorganization case, a corporate Chapter 11 or a Chapter 12, then the estate and the debtor are a single taxable entity, and the debtor is the one that files the tax returns, or the debtor in possession, the trustee, if there is a trustee in control. Scalia, if that exception were intended, the provision I read contains an exception. It says, except in any case to which Section 1398 applies. 1398 applies to Chapter 7 and Chapter 11, where the debtor is an individual. Now, if there is an additional exception for Chapter 12 of the sort that you allege, why wasn't that put in there? There is no exception, and there shouldn't be an exception, Your Honor. They are within Section 1399, just like corporate Chapter 11 debtors. The debtor is the one that files the tax return. The debtor and the estate are one. All of that corporate earnings, all of the wages, the lottery winnings, the farm sale proceeds, all of those are part of the estate. Scalia, what does it mean, then, to say that no taxable, no separate taxable entity shall result? What does it mean, unless it means that it is not the estate which incurs the tax? Your Honor, respectfully, there is a difference between taxable entity and estate. The estate is a collection of property. That is the collection of property that's operated by the debtor in possession or trustee in a reorganization case. Scalia, but they would not have needed the exceptions for Chapter 7 and Chapter 11, where the debtor is an individual, if what you say is true, if indeed a bankrupt estate is, as you say, not an entity at all. You need that exception, Your Honor, in Chapter 7 case for an individual, because the individual earns income that is wholly independent from the estate, that's not part of the estate, so that the bankruptcy estate consists of the assets the individual owns on the petition filing date, the trustee administers those, sells the assets, may incur some liability for selling the assets for taxes, pays those and deals with those, while the individual continues to earn income post-petition that's his own income. And so you need to have a separate taxable estate in those instances. But when the income that's earned during this whole period of administration from the petition filing date to the confirmation date of the plan is all property of the estate, then the debtor, the corporate Chapter 11 debtor or the corporate Chapter 12 debtor or the individual Chapter 12 debtor, is incurring that income as part of the estate. It's all property of the estate in a Chapter 12 case. Section 1207 says that. And so the debtor is the one that files the tax returns and the debtor uses the estate assets to make the payments of taxes and to make the payments on the light bill and to make the payments on all of the other expenses of administration during this period of administration. But that's what this Court held in Nicholas, and that continues on in effect today. But, Ms. Friedman, wouldn't it be fair to say, then, that the taxes are incurred by the debtor and payable out of the estate? Why would it say incurred by the estate? It uses the term incurred by the estate. I think based upon the same kind of language that this Court used in Nicholas as incurred by the — incurred during the administration period, incurred by the debtor in possession, it's really a broad sense of all of the kinds of bankruptcy estates in a Chapter 7 case. This refers to all bankruptcy cases. And so in a Chapter 7 case, it's going to be just the assets that exist there on the corporate case. It's going to be the — all of the assets that are generating the income during the course of the administration of the Chapter 12 or the Chapter 11 case, or even the Chapter 13 case. In Chapter 13 cases, you have a specific additional provision, Section 1305, that deals with taxes payable post-petition, and it also includes post-confirmation. So it gives the government a broader kind of right so that the — GINSBURG The argument that is made against your position, 1305 was one of the provisions that was featured, I think, both in the Ninth Circuit and the Tenth Circuit. And their position seemed to be that 1305 gives the government an election. It does, Your Honor, provide for an election for the government. What's important is that in a 13 case, unlike a 12 or an 11, you have a very short period of administration. They have to file their plan within 15 days. It's confirmed within a month or two. And it's very unlikely that April 15th is going to fall within that short period of time, and that's when the government says that your taxes are incurred. So you're going to have a — it's unlikely you're going to have an administrative expense claim for your income taxes during the period of administration of a Chapter 13. It's a very short period. So the government has the option, not only during the administration period, but also during the whole period of the plan, to elect to say, all right, there have been some big commissions earned here, and I want to go ahead and collect from the estate, rather than just wait and see what the debtor earns afterwards. And so it then can go ahead and file a claim and ask to have that claim paid out of the bankruptcy estate. And it really gives the government much broader rights than it does in a normal Chapter 11 or a Chapter 12 case or a 7. If I may reserve the remainder of my time. Roberts. Thank you, Ms. Freeman. Thank you. Mr. Shah. Mr. Chief Justice, and may it please the Court. The postpetition income tax liability at issue in this case is not subject to Section 1222a2a, and thus cannot be treated as a dischargeable non-priority debt for two reasons. First, consistent with the structure of Chapter 12, a Chapter 12 plan is limited to prepetition debts and does not cover postpetition debts, including administrative expenses. Rather, postpetition administrative expenses are paid separately through Section 1226b1, which contains no farm sale exception. Because Section 1222a2a strips priority only from a subset of claims covered by a Chapter 12 plan and does not alter which debts fall within that plan, it cannot apply to the postpetition tax liability at issue. What farm sales would be included? What farm sales would get this benefit that Senator Grassley obviously wanted them to have? Your Honor, it would be prepetition sales. That is, any capital gains tax incurred from a prepetition sale, those would be priority expenses covered under a Chapter 12 plan, under Section 1222a2, because they fall under their priority claim under Section 507a. Roberts, Does that make sense, though, in terms of you're talking about farmers and fishermen and you're talking about the treatment of their central asset, whether it's the farm or typically the boat, and they either want to try to save the farm or the boat, and they go into bankruptcy. And the big issue is how that asset is going to be treated, and your position is it's not in the bankruptcy at all. It's outside of it. That seems to me to be at least counterintuitive. Well, Your Honor, two points. One, as a practical matter, Chapter 12 is a reorganization provision. This is not a provision just designed to allow farmers to get out of the business of farming. So often what will happen is that farmers will try to reorganize some of their farm sale assets, sell some of their livestock, change their farming operation to see if they can save it outside of bankruptcy first. All of those sales, an example of that is the Knutson case. Knutson is the only circuit case to go Petitioner's way. In Knutson, it not only involved the postpetition tax liability of the type that's issued in this case, it also had a significant prepetition tax liability component in that case based upon just what I was explaining, the farmer trying to reorganize their farm, trying to change their farming operation to save the farm without having to go into bankruptcy. But also, I gather, it's a fairly typical situation where you have farmers that might want to sell part of the farm. You know, they have dairy and corn operations or something, and they sell one to try to preserve the other. And that's exactly the sort of thing that should be considered in the bankruptcy context. And yet your position says we're going to treat it outside the bankruptcy. Well, Your Honor, it certainly happens within the bankruptcy, and I'm not disputing your point that that may arise in a bankruptcy case just like it arise in this case. And it will be dealt through the bankruptcy. That is, the sale will happen and it will be approved by the bankruptcy court. The question is, how do you treat the capital gains tax arising from the farm? But that's a big deal, if you're deciding how the plan's going to work, whether they or what the amount was here was big for the farmer. And the idea of, well, we're going to pretend that's not at issue here seems to me to be, again, not to make a lot of sense. Your Honor, we're not asking, to be clear, to pretend that that's not there. How the tax liability would be dealt with under the government's view is, at the time the debtor moves to sale the farm asset during the bankruptcy case, like in this case, that sale of the farm asset generated $960,000. That was the sale price. The capital gains tax liability in this case is $29,000. If they would have set aside from that $960,000 sale price $29,000 to pay the capital gains tax debt, that would resolve the issue. We're not saying that it's a joint.  Kagan. Kagan. And we have a reason to think, Mr. Shah, that what Congress was worried about here was cases in which the bankruptcy plan would not be approved at all, because there were very high capital gains taxes that would result from a sale, and that that was the problem that everybody was focused on, was making sure that farmers could take advantage of section 12. So it's a little bit odd. It's actually more than a little bit odd. It's a lot odd to read the statutes to apply not in that context, but only as to people who have somehow managed to sell their property, you know, 18 months before going into bankruptcy. Shah. So, Your Honor, when you say that everybody was focused on this problem, we have the evidence of exactly one person as to what one legislator thought that this bill would do. That's Senator Grassley. Now, admittedly, Senator Grassley's statements do indicate an intent on his part to reach post-petition taxes. But the pre-existing statutory framework does not permit that result. What section 1222a2a does is it allows the debtor to strip priority from a certain subset of governmental claims, such as pre-petition taxes, and there is no doubt that Senator Grassley correctly understood that's how section 1222a2a. Alito, it's not just Senator Grassley. So your interpretation makes this provision, 1222a2a, a very, very little practical value, and you think that's what Congress intended. And not only would it mean that post-petition capital gains on the sale of part of a farm or an entire farm would be outside of the bankruptcy, outside of the bankruptcy, but all of the pre-petition capital gains would be outside of it, too, unless they occurred in a previous taxable year. Gannon, a couple of responses, Your Honor. First of all, I don't think it's sort of a null set or a vanishingly small set. There's the Knudsen case which qualifies of, in the Professor's amicus brief, on page 10a of their amicus brief, they provide a chart of representative cases involving post-petition tax liabilities. They cite eight cases in their chart on page 10a. Three of those eight cases involve significant pre-petition tax liabilities, even under the narrower definition of pre-petition. But to get to your larger point, even to the extent it might be narrower than what Congress intended, Congress certainly knew how Section 1222 operated in the sense that it would strip priority from certain claims that are already entitled to priority under a Chapter 12 plan, such as pre-petition taxes, and both sides agree that that's how Section 1220a2a works. There's no dispute about that. The dispute is about whether this post-petition tax liability comes within the Chapter 12 plan in the first place. That dispute turns on pre-existing code provisions, part of the 1978 Act, part of the 1980 Act, and the 1986 Act. Whatever deference Senator Grassley is owed as to the operation of Section 1220a2a itself, he's owed no deference whatsoever as to the proper interpretation of those pre-existing code provisions. It's our position that those pre-existing code provisions, Section 503b, Section 346, and Section 1398, 1399, all lead to the result that post-petition tax liabilities are not an administrative expense within the meaning of the code. How about employment tax, employment taxes? Your Honor, employment taxes arguably could be treated differently. Now, as a matter of discretion, the IRS has chosen not to treat them differently. That is, they don't try to seek those as administrative expenses. I think there would be an argument, and we set this – set forth the argument in a footnote of our brief what the potential argument would be, is that they could be deemed an administrative expense not because they're incurred by the estate, but under the other part of the definition of an administrative expense under 503b1a. Just following up on that. Right. Breyer. I'm looking for what I'd call past practice where there must be a lot that would shed some light on this. So I'm – I see your point that we cannot call these taxes administrative expenses is because when that's defined in 503 for the entire code, it talks about administrative expenses incurred by the estate. Yes, Your Honor. And so you're saying here are three people who incur their own taxes. One is a section 11 – section 12, one is section 13, and one is individuals in section 11. Is that right? At least that's my guess. Yes, Your Honor. Okay. So we have three categories of people where the taxes literally taken, they incur postpetition taxes. Now, the bite would come up if it turned out when they were getting around to settle these things, that there isn't enough money to pay fully the postpetition or, let's note, to pay fully domestic support obligations, wages, and also Federal taxes. Isn't that – that's where it's going to show up, because the question will be, do you have to shave the Federal taxes because they're coming in to be paid as an administrative expense priority, which is only there as number two, I think, in light of number one? Or do you not shave them at all? If they're liable personally, there isn't any reduction in the amount owed the Federal government. If it's there allowed because it's one of the estate's expenses, basically, using the estate very, very loosely, then they would have to take a reduction too. Am I right? Are you following it? I think so. Let me try to say what I think – what you're saying. Under Chapter 12 and 13, if it is, in fact, a priority claim, whether it's a priority claim or an administrative expense, those have to be paid in full. There isn't an ability for the Court to shave those. No, administrative expenses don't have to be paid in full if there isn't enough money for them to and unsecured claims for domestic support obligations, because administrative expenses is the second priority, it isn't the first. No, okay. So, Your Honor, there is a misunderstanding, I think, in what you're saying. That is, in a Chapter 12 plan, the priorities matter more in terms of the relative priority between Category 1, 2, 3, 4, 5, 6, 7, and 8. They matter more in a Chapter 7 liquidation, where there is a finite set of assets being liquidated, and then those will be paid out in the priority that you're talking about. In a Chapter 12 or 13 case, there's going to be a plan proposed, and that plan will be confirmed. Now, under 1222a2, any of those priority claims, whether it's first priority or eighth priority, has to be set out and to be paid in full in order for the plan to be confirmed. So the plan won't be confirmed at all. There isn't a matter of ordering the priorities in a Chapter 12 or 13 case. Now, if I could turn back to Justice Sotomayor's question. Sotomayor, before you answer my other question, could you finish your thought on what you're doing with wages? Are they given priority or aren't they? If we're saying they're not, if we accept your reading of this, employee wage taxes are not administrative expenses. Shah... Shah... Well, Your Honor, they're certainly not administrative expenses under the definition of incurred by the estate. That would be the relevant issue in this case. They may come under the other definition of administrative expense, that is, the costs the necessary costs of preserving the estate, like wages. If you consider the employment payroll tax that's paid simultaneously as the wage, as part and parcel of the wage, you could get at it that way. But again, that doesn't have anything to do with the incurred by the estate language. The incurred by the estate language, as you properly point out, is relevant the most relevant provisions as to whether a tax is incurred by the estate are Sections 346B and 1398 and 1399. How does that work, Mr. Shah, because this was a part of your argument that I have to say sort of tripped me up, because you define incurred by the estate by reference to those provisions, but those provisions were enacted 2 years and 4 years after the phrase that you're trying to define. So it must have been a very prescient Congress. Shah... Well, Your Honor, it was a prescient Congress, because in the legislative history that we cite, they say and it's not true that all of the separate taxable entities rules weren't implemented until afterwards. Section 346, which dealt admittedly only with State and local taxes, they set up rules, the same separate taxable entity rules that Congress later enacted 2 years later to apply to State and local entities, and that's the provision 346 that's reprinted in our appendix at page 2. What Congress said when they passed 346 is, we fully expect, and as they had originally drafted them in the 1978 Act, to also apply to Federal taxes, but it decided to pull them out of the Act so not to step on the shoes of the jurisdiction of the Ways and Means Committee. That's the explanation that Congress provided, and then 2 years later. Kagan. Kagan. But you're saying that as of 1978, there was kind of an idea in people's heads about the separate tax entity, or at least in some people's heads, but that idea had never been converted into any statutory language. And you're suggesting that we should take this phrase, incurred by the Estate, and read it as if they were referring to something real that was in a statute. It's not simply taking it out of their head, Your Honor. The Section 346 rules, which are parallel and apply to State and local taxes, those didn't come out of nowhere. Those came out of prior IRS rulings as to when there is a separate taxable entity in a bankruptcy case. There were pre-existing, before the 1978 Act in particular, there was a 1972 IRS revenue ruling which set forth the rules about when there is a separate taxable entity, whether the Act should be taxed to the Estate or to the debtor. Section 346 in the 1978 Act codified those rules for State and local income taxes. In the intervening 2 years between 1978 and 1980, when Congress consummated the step and extended those to Federal taxes, the IRS was still applying its pre-existing practice based on its revenue ruling. So there wasn't a gap where there was no guidance as to whether, how to determine whether these were incurred by the Estate or not. Courts may — courts readily would have looked, I presume, to the 1972 Treasury ruling and the parallel 346 rulings in that gap time until the legislative guidance came along and then codified that result with respect to Federal taxes. Now, I think to get to the other question while we're on this, because the 1398, 1399, which suggests that we're looking to the separate taxable entity, but if I understand correctly, in the corporate context, the IRS actually does not look to that. It looks to just the question of who's filing the tax return. So if that's the case, aren't you, in that very large bankruptcy context, losing your textual anchor entirely? No, Your Honor. There are two ways that a bankruptcy Estate can incur a tax. One is if it's a separate taxable entity, then it has — then it's responsible for the taxes. All the taxes are taxed to the Estate and it has to file the return and pay it. The other way is if it has the duty to file the return. That's a different provision of the Internal Revenue Code. Section 6012b3, 6012b3 also appears in the government's — in the appendix to the government's brief. What 6012b3 on page 14a says is that in a bankruptcy case, the trustee of a corporate bankruptcy Estate shall make the return for income in a corporation. What this Court held in Hollowell, which both sides cite and both sides agree, is that when a corporate trustee has a duty to file a return under 6012b3, it also has a duty to pay the tax. That is, it incurs, it's liable for or incurs the tax. So there are two ways to incur the tax. One is separate taxable entity. The other way is if the Code imposes an obligation on the bankruptcy Estate to file and pay the tax return. That's the other way to interpret it. And that's why all the Chapter 7 and 11 corporate cases that are cited by Petitioners are inapt. In those cases, the postpetition tax liabilities are, in fact, incurred by the Estate. What's remarkable is that Petitioners do not cite a single Chapter 12 case in which a postpetition tax liability has been treated as an administrative expense. Chapter 12 has been around since 1986, and yet there is not — if this was such a big problem that Congress was trying to get at it through this way, you would have expected at least a single case in which a postpetition tax liability had been treated as an administrative expense. Breyer. How would it show up? I mean, what difference? Suppose you — in 11 individual, 12 or 13, what's the difference whether you treated it as an administrative expense or not, as long as they all have to be paid anyway, you said? Sure. So the difference is in Chapter 12 and 13, they are treated outside of the bankruptcy plan itself, but they do need to be paid up front. And in fact, they receive a taxable— No, I mean, how would we know? How would we know? Oh, they're treated differently? Yeah. Through the Code. So in Chapter 12 and 13, 1226b1 and 1326b1, the parallel provisions in Chapter 13, they pull out administrative expenses. They pull them out— Let's imagine you're absolutely right. They mean to treat them differently. Yes. They mean to treat the postpetition tax obligation to the Federal Government not as an administrative expense. But this is an instance where the business will continue, and therefore, you have said in order to continue, you have to pay all your tax liability and all your administrative expenses. Yes. Therefore, what difference does it make whether you do or whether you don't treat them as administrative expenses? What is the operational difference? Sure. Your Honor, it would be to the government's advantage if these were in the ordinary course, at least before Section 1222a2a was enacted that stripped priority. It would have been in the government's advantage to take the position that these were administrative expenses. And the reason why it's favorable to the government is those have to be paid up front as part of the bankruptcy. If you don't treat them as administrative expenses, and the government took the self-denying position here in the years leading up to 2005, consistently taking the position these were not administrative expenses, even though it was to the government's disadvantage because the code required that interpretation, and the disadvantage is you don't get — the government didn't get them paid up front as administrative   them up front as administrative expenses. You can collect them outside of the bankruptcy. And when you go to collect them outside of the bankruptcy, there's much more uncertainty. There may not be any. Roberts. It's certainly not a self-denying position now, right? You're arguing that these are — that the taxes of this sort are administrative expenses when that puts you at the head of the line. Your Honor, that's just not true. Dating back to 1998, and these are cited in the government's brief at pages 16a to 18a, dating back to 1998, the government had consistently taken the position that post-petition tax liability — No, no, I'm talking about the position you're taking now. You're arguing a different treatment of these taxes as to whether or not they're administrative expenses, not solely, but it leads to the result that you get the money first either way. Because Congress — the government has stayed consistent in its position. Because Congress has changed the rules, it turns out that that same interpretation of the rules — Well, but then you're saying that Congress changed the rules in a way that, as Justice Alito's question suggested, really doesn't do much at all, when what they wanted to do was provide some real protection for farmers and fishermen. I can't speak to what Congress wanted to do. If, in fact, they wanted to do that, then they did it the wrong way. What would be the right way? And you could easily enact a separate provision within 1222 that said something like — use the language something like Section 1305 that said any taxes that become payable after the filing of the petition shall be treated as non-dischargeable, non-priority debts and paid that way. But they didn't do that. And I think Section 1305 is critical here, and this goes to your question, Mr. Chief Justice, as well, that the government is trying to take advantage here. The adopting Petitioner's position would have a significant ripple effect in Chapter 13. This is not simply a matter of trying to get to the result that Senator Grassley intended by narrowly interpreting 1222a2a, and it won't have any other effects in the code. It will have a significant effect in the intended operation of Chapter 13. And the reason why that's important is, to put this in perspective, there are about 600 to 700 total Chapter 12 filings each year. There are somewhere on the upwards of 400,000 Chapter 13 filings each year. And here's where it would throw a wrench into Chapter 13. If you look at Section 1305 of Chapter 13, and that's reproduced on page 11a of the government's appendix, what 1305a1 does is it provides a special procedure for the government to file a claim for postpetition taxes, exactly the type of thing that would be a postpetition tax issue in this case. It says, Government, you can go file a claim to have that included within the bankruptcy plan. If you adopt Petitioner's position, there would never be a case in which the government would ever have any occasion to invoke 1305a1, because they would be a problem. Kagan. Kagan. You said that there would be a significant ripple effect and practical difficulties. I understand your argument about 13 shows that you have to do this, and why would Chapter 13 be necessary if Petitioner were right, but you started out, I thought, by trying to show us that it would be a significant practical problem. I said it would be a significant disruption to the intended operation of Chapter 13. In practice, it would actually mean that the government comes out better under Chapter 13 than in the government's current position, because what Petitioner's position would do is it would be a problem. So it just does automatically for the government what is now done by some kind of government filing. Well, not even that, Your Honor, because under 1305a1 would be a dead letter. You could just rip that page out of the code and throw it away if you accept Petitioner's reading. The reason why that's true is because under their reading, it would get administrative expense priority, which are paid up front, super priority, even before anything else. But under 1305a1, it doesn't get administrative expense priority. It may not even get any priority at all. And so it's a significant change in the operation of how the government would be seeking postpetition tax liabilities. Now, it would work to the detriment of the debtor in Chapter 13 cases, the upwards of 400,000 in Chapter 13 cases. Roberts. Roberts. But those are small potatoes compared to the sale of a farm and a boat. I would say that this particular issue of large capital gains from the sale of significant assets doesn't typically arise in the Chapter 13 cases. Sure. The capital gains tax wouldn't, but there's all sorts of postpetition income taxes that would arise in a Chapter 13 case. Chapter 13 case, those are wages that are being incurred after the filing of the petition. All of the taxes on those wages after the petition would be the type of – would be eligible for postpetition tax treatment. Well, but in Chapter – Chapter 13 cases are the ones that you – that are typically resolved very quickly, right? Your Honor, it is true that from the statistics that I've seen, on average, we're talking about four months in a Chapter 13 case. On average, in a Chapter 12 case, according to the professors' amicus brief, median time is about eight months. What's clear from the legislative history, the reason why Congress set up the Chapter 13 rules as to make the tax incurred by the debtor rather than by the estate is because Congress expressly said in the legislative history, which is cited in our brief, that they expected the confirmation time to be relatively quickly in a Chapter 13 case. We know that they made the same assumption in the Chapter 12 case because, one, they enacted the same separate taxable entity rules, and, two, they put in actual deadlines in the code for Chapter 13, 90 days to propose a plan, 45 days to confirm it. So roughly four months is what Congress had extended. Now, in practice, it's been the case that bankruptcy courts have extended that time beyond the statutory deadlines. So perhaps they are open a couple of months longer than what Congress had expected. But that wasn't the intent that Congress had enacted this with. And if Congress wants to change that, it can go back and rewrite the rules to make that change. Sotomayor, before you finish, could you answer my question of what impact your broader reading, that Chapter 12 affects only prepetition debts, what else is that kind of holding going to affect? Your narrow alternative holding affects just this issue. That broader reading, I worry about a broader reading when I don't know its impact. Shah Rukin, Jr.: I don't think it would have any adverse effects, and the reason is this. The administrative expenses, whether they are included in the plan or not, are still going to be paid up front. If you take Petitioner's reading that administrative expenses are really part of the 1222A2 rather than 1226B1, you now have a conflict between 1226B1, which is on page 10a, which expressly addresses and only addresses administrative expenses, and states that, this is on page 10a, it says those will be paid before or at the time of each payment to creditors under the plan. Now, if you also said that they come under 1222A2, which is the only way that Petitioners can win, if they also came under 1222A2, 1222A2 says that they must be provided for full payment in deferred cash payments, so deferred interest-free payments over the life of a 3- to 5-year bankruptcy plan. That's very different than having them get super priority treatment under 1226B1 and be paid in front, up front, separate from the plan. So that is one significant piece of textual evidence that Congress thought that these should be paid outside of the plan. The other piece of textual evidence is section 1227A, which appears on page 10a as well, and what it says is that the confirmed plan shall be binding on each creditor. That's the only potentially relevant category to the government. But section 101 defines creditor, and this is on page 1a of our appendix, as an entity that has a claim against a debtor that arose at the time of or before the order for relief concerning the debtor, that is, the holder of a prepetition claim. If a confirmed Chapter 12 plan is only binding on the holder of a prepetition claim, it makes no sense to include postpetition claims within a Chapter 12 plan. I don't even know what it would mean to have a confirmed, to have a plan include a debt and not have that plan binding on the government. And so I think if you take those two pieces of textual evidence together, I think that strongly supports the interpretation of 1222A, too, that when it says a claim of the type specified in section 507, it means claim and doesn't mean claim and administrative expense. Now, admittedly, Congress has not been perfectly clear in using that term. It uses the term claim to mean claim and administrative expense. Sometimes it means it to only mean claim, but we should give effect to the distinction between claim and administrative expense in light of section 1226b-1, which specifically already addresses administrative expenses. Sotomayor, but the problem with that argument is that the two are used interchangeably by everyone, Congress, the Court. Yes, Your Honor. And if the government in many situations, given the broad deficition of claims, the only logical conclusion is that it includes a subset, a liability created by administrative expense. Your Honor, and if you were only construing that language in isolation, if it only said claim in 507a-2 and 1226b-1 didn't exist, I would be in full agreement with you that you would read it to mean claim and administrative expense, because we know that administrative expenses have to be paid in some way through the bankruptcy case. But 1226b-1 does exist in this code, and we need to give that provision effect. The last point I would make is Congress knows how to include administrative expenses within a bankruptcy plan when it wants to. If you look at the corresponding provision in Chapter 11, as opposed to the provisions in Chapter 12 and 13, this is section 1129a9a, it expressly provides for the payment of administrative expenses within the context of the Chapter 11 plan. Chapter 12 and 13 take a different approach, and the Court should give effect to the bankruptcy plan. If there are no further questions. Roberts. Thank you, Mr. Shah. Ms. Freeman, you have two minutes remaining. Your Honor, one of the first things that Mr. Shah said was that the debtor should have set aside $29,000 from the sale proceeds to pay the taxes. That's $29,000 in sale proceeds or property of the estate. And, yes, those are ordinarily set aside to pay the taxes. That's how bankruptcy cases work. Because you have 1222a2a, that $29,000 didn't need to be used to pay the taxes and instead was set aside to be treated under the plan of reorganization, where that tax claim could be demoted in priority to a prepetition claim and discharged. But the ordinary course is that the sale proceeds are used to pay the taxes, the administrative expenses, that's how bankruptcy works. And the government's argument here completely undercuts that. With respect to section 1305, the language is different because it uses the word payable. It includes all post-petition, post-confirmation, all the way through to the end of the bankruptcy case. Not just the short period of administration. In Chapter 13 cases, you still have to pay administrative expenses. It's just that it's pretty rare that you have a tax that is incurred during that short period of administration. And so you have a separate statute that covers the whole period through the entirety of the plan of reorganization. The Court was Mr. Shaw was asked about cases where, and in fact, an administrative expense claim was incurred for a capital gains tax in a Chapter 12 case. We would cite the court to the SPECT case. A copy of that is attached to the Professor's amicus brief. And that shows where a plan was defeated because of the large capital gains tax from the sale of the family farm. And that in fact is cited in some of the, not the legislative history, but some of the commentary about one of the reasons why Senator Grassley supported Section 1222A2A and drafted it in the first place. This prevents a plan from being confirmed in so many Chapter 12 cases. Family farmers are not able to go through with their plans. And that's why you have the demotion in priority. It does have very little practical value if in fact it only applies to pre-petition sales and not just pre-petition, but more than a year pre-petition in most instances. The Professor's amicus brief just refers to pre-petition in its little chart. It doesn't say that those are not within the scope of 507A8 and those eighth priority. I'm sorry, Your Honor. Roberts. Thank you, counsel. The case is submitted. Thank you.